# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
GEORGE M. LIND,                         )
                                        )
              Plaintiff,                )
                                        )       Civil Action No. 10-2207 (RBW)
       v.                               )
                                        )
JOHN McHUGH,                            )
Secretary of the Army,                  )
                                        )
              Defendant.                )
_____)

## MEMORANDUM OPINION

The plaintiff, George M. Lind, filed this civil action against the defendant, John McHugh,

in his capacity as the Secretary of the Army, alleging that "[t]he Army's [Board for Correction of

Military Records ("Correction Board")] 2012 decision refusing to remove [the] plaintiff's

Officer Evaluation Report [("OER")] for the period July 11, 1988, to February 28, 1989, violated

the Administrative Procedure Act[("APA") , 5 U.S.C. §§ 701-706 (2012),]" see Amended and

Supplemental Complaint for Declaratory Relief ("Am. Compl.") at 25, and seeking to set aside

that decision, id.  Currently before the Court are the defendant's Motion for Summary Judgment,

the Plaintiff's Cross-Motion for Summary Judgment, and the defendant's motion to dismiss.

After carefully considering the parties' submissions[1] and the Administrative Record ("AR") in

this case, the Court concludes for the following reasons that it must deny the plaintiff's motion

_____

[1] In addition to those submissions already identified, the Court considered the following filings by the parties in
reaching its decision: (1) the Memorandum of Points and Authorities in Support of Defendant's Motion for
Summary Judgment ("Def.'s Summ. J. Mem."); (2) the Plaintiff's Memorandum of Points and Authorities in
Support of Cross-Motion for Summary Judgment ("Pl.'s Mem."); (3) the Defendant's Motion to Dismiss or, in the
Alternative, Defendant's Reply and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def.'s Dismiss
Mem."); (4) the Plaintiff's Opposition to Defendant's Motion to Dismiss, and, Plaintiff's Reply to Defendant's
Opposition to the Cross-Motion for Summary Judgment ("Pl.'s Opp'n"); (5) the Defendant's Reply in Support of
Motion to Dismiss ("Def.'s Reply"); (6) the Defendant's Statement of Material Facts to Which There Is No Genuine
Dispute ("Def.'s Facts"); and (7) the Plaintiff's Statement of Facts ("Pl.'s Facts").

1

for summary judgment and the defendant's motion to dismiss, and grant the defendant's motion for summary judgment.

## I. BACKGROUND

The following facts are undisputed.[2] The "[p]laintiff is a retired Colonel . . . in the United States Army Reserve." Def.'s Facts ¶ 1. He began his career in "the Army as a commissioned officer on April 22, 1967," id. ¶ 2, and "[o]n March 18, 1988, [he] was promoted to [the rank of] Colonel," id. ¶ 5. "In July 1988, [the] [p]laintiff began performing duties as the Chief[] [of the] Construction Management Office . . . at the Office of the Chief, Army Reserve." Id. ¶ 6. He "received an [OER] for his service as the Chief[] [of the Construction Management Office], for the period of July 11, 1988, through February 28, 1989 ('1989 OER')." Id. ¶ 7. His "rater was Brigadier General Roger C. Bultman, and his senior rater was Major General William F. Ward." Id.

The version of the Army Regulations "in effect at the time of [the] [p]laintiff's 1989 OER[] established the policies and procedures for preparing, processing[,] and using the OER." Id. ¶ 8 (citing Army Reg. 623-105 and AR at 7 ¶ 20). In accordance with the Regulations,

> [t]he Army's Officer Evaluation System is designed to identify officers who are best qualified for promotion and to distinguish between those officers who should be kept on active duty, those who should be retained in grade, and those who should be eliminated from the Army. The Army collects the necessary information on each officer's performance through the Officer Evaluation Reporting System. Under this system, each officer is rated by a rater, who is senior to the officer in the chain of command and who is the person most familiar with the officer's day-to-day performance. The senior rater, who is higher in the chain of command than the rater, will evaluate the officer from a broad organizational perspective. Each officer is evaluated at least annually. In addition to administrative data, a completed OER contains a performance evaluation of the officer's professionalism and the rater's evaluation of the

---

[2] In his statement of facts, the plaintiff indicated that he does not object to the majority of the defendant's statement of facts. See generally Pl.'s Facts. Accordingly, the Court will refer to the defendant's statement of facts unless it is otherwise disputed by the plaintiff. The Court additionally will refer, where appropriate, to the Administrative Record.

officer's performance and potential. The senior rater evaluates the rated officer's potential relative to his or her contemporaries.

To rate an individual, the rater and senior rater use a Department of the Army . . . Form 67-8 [("DA Form 67-8")], that is used by rating chain members to provide the [Department] with performance and potential assessments of each rated officer. The form is divided into "Parts," in which the rater and [the] senior rater render their assessments of the individual officer. These assessments are accomplished through numerical and narrative means. Part VII of the form is reserved for the senior rater, who, as noted by the board, is required under Army Reg. 623-105 ¶ 4-16[] to rate the officer by comparing the rated officer's potential with all other officers of the same grade. In Part VII(a), the senior rater is to check one of nine blocks that rank the officer's potential against that of all other officers of that grade. As noted by the board and provided for in regulation, this evaluation is based on the premise that in a representative sample of 100 officers of the same grade, the relative potential of such a sample will approximate a bell-shaped normal distribution pattern. As the regulation explains, in a representative sample of 100 officers of the same grade . . . only one officer can reasonably be expected to be placed in the top block. In addition to the numerical rating, the senior rater must also write narrative comments addressing the officer's performance in Part VII(b) of the OER.

Id. ¶¶ 8-9 (internal quotations marks and citations omitted) (citing Army Reg. 623-105).

The plaintiff signed his 1989 OER on September 11, 1990, and his rater signed it on September 18, 1990. Id. ¶ 10. The "rater marked all boxes concerning [the] plaintiff's performance evaluation as '1-High Degree[,'] the highest possible rating, with the exception of block 12, military bearing and appearance, which was marked as '2-High Degree,' the second highest possible rating." Id. The rater's comments concerning block 12 stated that the "[p]laintiff '[c]onsistently works at maintaining military bearing and has made improvements.'" Id. (second alteration in original). The rater's other comments were generally positive, and concluded that the plaintiff was "a good soldier who should be considered for assignment as a full time . . . Army Command . . . or . . . Major Command[] staff officer. He has also demonstrated the potential to perform the duties of a [Department of the Army] or [Department of Defense] action officer." Id.

3

The 1989 OER reflects that the senior rater placed the plaintiff in the fourth block. AR at 325. The fourth block rating was "below the center of mass of the [senior rater's] profile."[3] AR at 11. In his comments, the senior rater stated:

> COL Lind is an effective officer whose construction management office has done a good job in a very difficult and demanding operational area that clearly required dedication to produce results. COL Lind's efforts to improve the level of coordination among this agency, FORSCOM, the CONUSAs, and the Corps of Engineers have been particularly commendable. COL Lind is an asset to the Army Reserve and should be reassigned to an appropriate position at the MUSARC or MACOM level where his talents may be best utilized.

AR at 325.

In February 1989, the plaintiff became the Director of Resource Management at the Army Personnel Center. AR at 33 ¶ 14. He "received an OER as the Director . . . in February 1990," which rated him "as 'always exceeded requirements,' and his potential for promotion [as] 'promote with contemporaries.'" Def.'s Facts ¶ 13 (citation omitted); see also AR at 33 ¶ 14. The plaintiff "received a '1[,'] the highest rating, in 14 areas of professional competence," but "did not receive a ranking relative to other officers because his senior rater lacked sufficient time-in-position to provide him a rating." Def.'s Facts ¶ 13. "Following his February 1990 OER[,] [the] [p]laintiff received three more OERs, all of which were adverse." Id. ¶ 14. The Army Personnel Center reviewed the plaintiff's records and, on February 28, 1992, "informed [him] . . . [that] he was being referred to a Department of Army Active Duty Board and considered for involuntary release [from] active duty." Id. ¶ 15.

---

[3] The "center of mass" ranking is considered "the median ranking." Musengo v. White, 286 F.3d 535, 537 (D.C. Cir. 2002).

The "[p]laintiff appealed the three adverse OERs issued subsequent to his February 1990 report to the Officer Special Review Board . . . ,[4]" which "determined that [the] three OERs . . . should be removed from [the] [p]laintiff's official file." Id. ¶ 16.

The "[p]laintiff also appealed his 1989 OER to the [Officer Special Review Board]. The appeal was based on [his] allegation that neither the rater nor [the] senior rater" evaluated him objectively, "and that the 1989 OER was 'influenced by events which occurred after the rating period' since the OER was not completed until later." Id. ¶ 17 (quoting AR at 138). When asked by the Officer Special Review Board, neither the rater nor the senior rater "could remember why it took nineteen months to complete the OER, but his rater noted to the [Board] that perhaps [the] [p]laintiff did not provide[] a support form timely." Id. The "[p]laintiff did not provide any rationale to the [Board] for why the report was late and did not date his support form." Id. "After considering all the evidence, the [Officer Special Review Board] determined that [the] [p]laintiff 'failed to provide clear and convincing evidence that supports[] his contention that the contested OER is not an objective evaluation of his true performance. Therefore, the OER should not be deleted.'" Id. (quoting AR at 140).

"On July 22, 1992, the Army Reserve . . . [Active Guard Reserve] Officer/Sergeant Major Continuation Board convened" to review officers as required by Army regulations. Id. ¶ 19. "Through a letter dated September 22, 1992, [the] [p]laintiff was informed that the board impartially examined his entire record," and "that the board did not recommend his continuation in the [United States Army Reserve Active Guard Reserve] Program." Id. ¶ 20. The letter continued that the plaintiff "would therefore be released from active duty no later than January 4, 1993." Id.

---

[4] "The Officer Special Review Board . . . is an administrative board composed of at least three senior officer voting members. The [Board] issues recommendations based on majority vote on OERs appealed and alleged to have substantive error. Board proceedings are administrative and nonadversarial in nature." Def.'s Facts. ¶ 16 n.3.

The plaintiff again appealed to the Officer Special Review Board on September 28, 1992 and "requested that the 1989 OER be removed from his file." Id. ¶ 21. He "alleged that his rater and senior rater conspired with his rating officials at [the Army Personnel Center]," and submitted new evidence with his appeal in the form of "twenty-five statements from former supervisors, subordinates, co-workers, and associates." Id. "The [Officer Special Review Board] reviewed these statements and contacted both the rater and [the] senior rater for further information," but "determined that [the] [p]laintiff failed to meet his burden by clear and convincing evidence that the 1989 OER was not a fair and objective evaluation of his performance by the rating officials." Id. ¶ 22. "Therefore, the [Board] denied [the] [p]laintiff's appeal for a second time on November 16, 1992." Id.

On December 23, 1992, AR at 232,[5] the plaintiff filed an application for correction of his military record with the Correction Board, requesting that the 1989 OER "be removed from his Official Military Personnel File," id. at 284. "[The] [p]laintiff was released from active duty on January 4, 1993," Def.'s Facts ¶ 23, while his application with the Correction Board remained pending. On May 23, 1993, AR at 283, the Correction Board found that "there [was] no basis for granting the [plaintiff's] request," and therefore denied his application, id. at 287.

In July 1997, the plaintiff appealed his 1989 OER to the Officer Special Review Board for the third time. Def.'s Facts ¶ 24. The plaintiff made additional allegations about cover-ups and misstatements, id., and "provided as new evidence excerpts from an Investigator General's . . . investigation into the 1989 OER, the three adverse OERs previously removed from [his] file, and other allegations" that the plaintiff made against his former supervisors, id. ¶ 25. The

---

[5] The Index to the Administrative Record provides the date of December 23, 1992, for the application, but indicates the application is unavailable. However, the Correction Board's decision resolving the application is included in the Administrative Record. See AR at 283-87.

Investigator General's report "substantiated [the] [p]laintiff's allegation that his 1989 OER was filed late," and stated also:

> The original complaint implied the later OERs were part of a conspiracy to eliminate the rated officer from active service. This conspiracy theory was not supported by the evidence as other adverse personnel actions leading up to the termination of the officer's active service had reasonable justification and an appropriate due process.

Id. (quoting AR at 205). The plaintiff's third Officer Special Review Board appeal was denied in a November 18, 1998 letter "because the evidence he provided did not justify altering or deleting the 1989 OER." Id. ¶ 26.

On May 16, 2001, the plaintiff appealed the Officer Special Review Board's November 18, 1998 decision to the Correction Board. Id. ¶ 27. The "[p]laintiff requested that the [Correction Board] remove his 1989 OER from his military records, amongst other requests for relief." Id. The Correction Board "found that [the plaintiff's] original application" to remove the 1989 OER "was previously considered and denied by the Board on [May 26, 1993]." AR at 70. Because "more than a year had elapsed since his [1993] application was considered and denied . . . , staff members of the 2001 [Correction Board] determined that there was insufficient evidence provided by the [p]laintiff to warrant late submission" of his appeal to the Correction Board. Def.'s Facts ¶ 28. "Accordingly the [Correction Board] returned the application to the [p]laintiff without action." Id.

On July 17, 2003, the "[p]laintiff was transferred to the Army of the United States retired list . . . at the rank of Colonel with thirty years qualifying service." Id. ¶ 29. He then filed a third appeal with the Correction Board on September 19, 2005, "requesting that the [Board] remove his 1989 OER, set aside his non-selection for continued participation in the [Army Guard Reserve] Program, set aside his release from active duty on January 4, 1993, reinstate [him] to

active duty until the mandatory retirement date, and expunge all records related to the involuntary release." Id. ¶ 30. The "[p]laintiff argued that his 1989 OER was a 'de facto relief for cause' and that the rating officials had a responsibility to issue this OER timely." Id. ¶ 31 (quoting AR at 60). He further "alleged that the 1989 OER was a derogatory, career-ending below-center-of-mass . . . OER." Id. (quoting AR at 57) (internal quotation marks omitted). He additionally "maintained that he was 'deprived . . . of the opportunity to fairly examine or contest the transfer to [the Army Personnel Center], and to seek corrective action.'" Id. (quoting AR at 61). "At the time of [the] [p]laintiff's 1989 OER, Army Reg[ulation] 623-105, paragraph 4-27" stated:

> The following types of reports will be referred to the rated officer by the senior rater for acknowledgement and comment before it is sent to [the Headquarters of the Department of the Army]. . . . [:] [a]ny report with a senior rater potential evaluation in one of the bottom three blocks in part VIIa. . . .[, a]ny report with ratings or comments that, in the opinion of the senior rater, are so derogatory that the report may have an adverse impact on the rated officer's career.

Id. ¶ 32 (alterations in original) (quoting AR at 301). "The [Correction Board] convened . . . on June 15, 2006, and considered [the] [p]laintiff's application and evidence," and "found that the nineteen month delay in complet[ing] . . . [the] 1989 [OER] was improper, that the rating officials could not remember the cause for the delay, and that [the] [p]laintiff offered no explanation for why he did not contact the rating officials as to the status of his OER." Id. ¶ 33(a). The Correction Board also found that "there [was] insufficient argument or evidence that would support removal of [the plaintiff's]" 1989 OER and thus declined to remove the OER from his military record. AR at 48-49.

"On December 17, 2010, [the] [p]laintiff filed a [judicial complaint] in this Court seeking to set aside the 2006 [Correction Board]'s decision denying his request to remove the 1989 OER pursuant to the [APA]." Def.'s Facts ¶ 35. In his complaint, the plaintiff reiterated the

allegations that he made in his September 19, 2005 appeal to the Correction Board. See id. (citing Compl. ¶¶ 9-12, 22-24, 28-29). The Court thereafter granted the parties' consent motion for a voluntary remand to the Correction Board so that the Board could

> reconsider the following specific issues: 1) Whether the 1989 OER was a derogatory report within the meaning of Army Reg. 623-105 (Officer Evaluation Reporting System) (March 1, 1983) paragraph 4-27(i); 2) If it was a derogatory report within the meaning of Army Reg. 623-105, 427([i]), whether the OER should be removed as a result of the failure to refer the report to [the] [p]laintiff prior to sending it to [the] Headquarters[ of the] Department of the Army; and 3) If it was a derogatory report within the meaning of Army Reg. 623-105, 4-27([i]), but the board determines the lack of referral does not require the removal of the OER[,] whether such OER was harmless with respect to [the] [p]laintiff's selection for non-retention for continued Active Guard Reserve service by the July 22, 1992[] Officer Continuation Board.

Id. ¶ 36.

The Correction Board "reconsidered [the] [p]laintiff's request to delete the 1989 OER from his official file on January 17, 2012." Id. ¶ 37. The Board found that the plaintiff's claims lacked merit or were speculative, and concluded that "there is an insufficient evidentiary basis for granting his request." AR at 10-11. Thereafter, on April 30, 2012, the plaintiff filed an amended judicial complaint "request[ing] [that] this Court . . . set aside the [Correction Board]'s denial of his request to remove the 1989 OER." Def.'s Facts ¶ 39.

The parties have now filed cross motions for summary judgment. Additionally, the defendant belatedly filed a motion to dismiss for lack of subject matter jurisdiction, which the plaintiff opposes.

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) allows a party to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). When a defendant moves to dismiss under Rule 12(b)(1), "the

plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation omitted). "Although '[a] District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone,' 'where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Coal. for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).

## B.    Summary Judgment in an APA Case

"Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." Loma Linda Univ. Med. Ctr. v. Sebelius, 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citing Stuttering Found. of Am. v. Springer, 498 F. Supp. 2d 203, 207 (D.D.C. 2007), aff'd, 408 F. App'x 383 (D.C. Cir. 2010)); see also Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977). But due to the limited role a court plays in reviewing the administrative record, the typical summary judgment standards set forth in Federal Rule of Civil Procedure 56 are not applicable. Stuttering, 498 F. Supp. 2d at 207. Rather, "[u]nder the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of

law the evidence in the administrative record permitted the agency to make the decision it did.'"

Id. (quoting Occidental Eng'g Co. v. INS, 753 F.2d 766, 769-70 (9th Cir. 1985)).  In other

words, "when a party seeks review of agency action under the APA, the district judge sits as an

appellate tribunal," and "[t]he 'entire case' on review is a question of law."  Am. Bioscience, Inc.

v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (footnote and citations omitted).

## III.  ANALYSIS

### A.      Whether the Court Has Subject Matter Jurisdiction

The defendant argues that the "[p]laintiff's case is untimely and should be dismissed due

to lack of subject-matter jurisdiction."  Def.'s Dismiss Mem. at 5.  Specifically, the defendant

asserts that because the "[p]laintiff initially received a decision from the [Correction Board] on

May 23, 1993" and "requested reconsideration of this decision in May 2001, . . . more than six

years after the original . . . decision," the Court lacks jurisdiction to resolve the plaintiff's case.

Id. at 6.

Under 28 U.S.C. § 2401(a) (2012), unless another statute provides otherwise, "every civil

action commenced against the United States shall be barred unless the complaint is filed within

six years after the right of action first accrues."  This Circuit "has long held that section 2401(a)

creates 'a jurisdictional condition attached to the government's waiver of sovereign immunity.'"

P&V Enters. v. U.S. Army Corps of Eng'rs, 516 F.3d 1021, 1026 (D.C. Cir. 2008) (citation

omitted).  Where a "service member 'seek[s] judicial review under the [APA] of an adverse

decision by the service's administrative review board,'" the six year statute of limitations period

set forth in 28 U.S.C. § 2401 applies.  See Nihiser v. White, 211 F. Supp. 2d 125, 128 (D.D.C.

2002) (alteration in original) (citation omitted).  If the "service member . . . seeks administrative

review of . . . an adverse decision," he "may apply for reconsideration of the adverse review

board decision." Id. (citing 32 C.F.R. § 581.3(g)(4) (permitting reconsideration of Correction

Board decisions)). But "if an application [for reconsideration] is not filed within six years of the

adverse review board decision, the period for filing suit does not run from the date of the

decision on reconsideration, instead it runs from the date of the adverse review board decision."

Id. at 129 (citing, among others, Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997)). "This rule

prevents litigants from using the filing of applications for reconsideration to delay the running of

the six year statute of limitations indefinitely, thereby thwarting those practical ends which are to

be served by any limitation of the time within which an action must be brought." Id. (internal

quotation marks and citation omitted).

However, "if an agency denies a petition for reconsideration alleging 'new evidence' or

'changed circumstances,' the agency's denial is reviewable as a final agency action, but it will be

set aside only for the 'clearest abuse of discretion.'" Sendra Corp. v. Magaw, 111 F.3d 162, 166

(D.C. Cir. 1997) (citation omitted). Any such "new evidence" must comprise "'facts which,

through no fault of [the plaintiff], the original proceeding did not contain.'" Id. (citation

omitted). Moreover, "[i]f for any reason the agency reopens a matter and, after reconsideration,

issues a new and final order, that order is reviewable on its merits, even though the agency

merely reaffirms its original decision." Id. at 167; see also Green v. White, 319 F.3d 560, 566-

67 (3d Cir. 2003) (citing Sendra, 111 F.3d 162, and Nihiser, 211 F. Supp. 2d 125) ("[W]e

conclude that any petition for rehearing to the [Correction Board] which does not include 'new

evidence' or reflect some 'changed circumstances' does not re-start the six year statute of

limitations [set forth in 28 U.S.C. § 2401]. If, however, the [Correction Board] re-opens a

proceeding and rules upon a petition that does contain such new evidence, such a ruling will

constitute a final agency action and will re-start the six-year time limit. This will be the case

even if the petition is filed more than six years after the original [Correction Board] decision in a [plaintiff's] case.").

It is beyond dispute that the plaintiff's 2001 request for reconsideration by the Correction Board was untimely. The Correction Board first denied the plaintiff's petition to remove the 1989 OER from his record on May 23, 1993. AR at 283. However, the plaintiff failed to file for reconsideration by the Correction Board until May 16, 2001, Def.'s Facts ¶ 27, almost eight years later. Further, it is clear that the Correction Board's denial of the plaintiff's 2001 request for reconsideration did not constitute a reopening or reconsideration of the 1993 decision. Rather, the plaintiff was informed in a one page letter that "there [was] no basis for resubmitting [his] request to the [Correction] Board and it [was] returned to [him] without action."[6] AR at 70.

Nonetheless, the plaintiff's case is properly before this Court if the Correction Board's 2006 decision constituted a reopening of his case. Underneath the heading "counsel's request, statement[,] and evidence," AR at 25, the 2006 Correction Board decision lists several items that post-date the 1993 Correction Board decision, namely: (1) the plaintiff's 2001 request for reconsideration; (2) "[a] heavily redacted copy of the [1997 Inspector General] report"; (3) a May 8, 1998 letter "from the U.S. Army Reserve Personnel Command . . . forwarding the [plaintiff's] OER appeal of the contested OER to the [Officer Special Review Board]"; (4) a November 18, 1998 letter from the Officer Special Review Board denying the plaintiff's OER appeal; (5) a September 3, 1998 letter from the Inspector General to the plaintiff; and (6) an August 25, 1999 letter from the U.S. Office of Special Counsel to the plaintiff. AR at 29-30. As the plaintiff notes, these items "constitute new evidence not available to the original 1993 [Correction Board]." Pl.'s Opp'n at 5. And while the 2006 Correction Board decision does not

---

[6] As discussed below, the Court finds that the Correction Board subsequently reopened the plaintiff's case. The Court thus need not address the plaintiff's contention that the 2001 denial was unlawful. See Pl.'s Opp'n at 4-5.

explicitly state that the Board had reopened the plaintiff's case, it appears that the Board treated the plaintiff's request for reconsideration as though it contained new evidence. See, e.g., AR at 32 (discussing a declaration made by the plaintiff in 2005); id. at 35-36 (addressing the 1997 Inspector General report and the plaintiff's 1998 appeal to the Officer Special Review Board); id. at 45-46 (discussing the conclusions reached in the 1997 Inspector General report).

The defendant argues that the Correction Board "merely reconsidered its earlier 1993 decision in 2006 and 2012 and denied [the] [p]laintiff relief." Def.'s Reply at 2. To be sure, the Correction Board did not clearly state that it was reopening the plaintiff's case. However, as this Circuit has observed, "the basis for finding that the information in" a given case "constitute[s] new evidence [is] the fact that the information did not exist before the agency took action." Am. Ass'n of Paging Carriers v. FCC, 442 F.3d 751, 757 (D.C. Cir. 2006). Here, as discussed above, some information considered by the Correction Board in 2006 was not before the Correction Board in 1993. And while it is true that "[r]eopening . . . does not necessarily occur by dint of the agency's reconsideration of the merits" of a case, id. at 756, the 2006 Correction Board decision went beyond consideration of the merits of the plaintiff's case and into the discussion and consideration of information that did not exist when it rendered its initial decision in 1993.

Accordingly, the Court concludes that the Correction Board reopened the plaintiff's case when it issued its 2006 decision. Because the plaintiff filed his judicial complaint less than six years later, in 2010, he has not run afoul of the statute of limitations set forth in 28 U.S.C. § 2401(a). The Court must therefore deny the defendant's motion to dismiss for lack of subject matter jurisdiction.

**B.      Whether Summary Judgment Is Warranted**

While it is the Correction Board's 2006 decision that gives this Court jurisdiction to entertain the plaintiff's case, the plaintiff in actuality challenges the Board's 2012 decision which reconsidered and clarified aspects of its 2006 decision.  See Am. Compl. at 25.  The defendant argues that "[t]he [Correction Board]'s 2012 decision was reasonable, lawful, and supported by substantial evidence."  Def.'s Summ. J. Mem. at 3.

"[I]t is generally understood that 'decisions regarding the correction of military records are reviewable under the 'arbitrary and capricious' standard of APA § 706.'"  Coburn v. McHugh, 679 F.3d 924, 929 (D.C. Cir. 2012) (citations omitted).  "The [C]ourt need only determine whether the . . . decision making process was deficient, not whether [the] decision was correct, . . . and must uphold the [Correction] Board's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  Kreis v. Sec'y of Air Force (Kreis II), 406 F.3d 684, 686 (D.C. Cir. 2005) (citations and quotation marks omitted).  In making this assessment, the Court is "guided by the 'strong but rebuttable presumption that administrators of the military . . . discharge their duties correctly, lawfully, and in good faith.'"  Coburn, 679 F.3d at 929 (citation omitted).

This Circuit has recognized that because the language of 10 U.S.C. § 1552(a) (2012), which governs the correction of military records, "fairly exudes deference" to the Secretary, decisions of the Correction Board are evaluated by an "unusually deferential application of the 'arbitrary or capricious' standard."  Kreis v. Sec'y of Air Force (Kreis I), 866 F.2d 1508, 1514 (D.C. Cir. 1989).  Although this "unusually deferential" standard does not make the Correction Board's decisions "utterly unreviewable, . . . only the most egregious decisions may be prevented."  Id. at 1514-15.  Accordingly, the Correction Board's decision need not be "a model

of analytic precision," but it "must minimally contain a rational connection between the facts found and the choice made." Dickson v. Sec'y of Def., 68 F.3d 1396, 1404 (D.C. Cir. 1995) (citation and internal quotation marks omitted). In this way, the deferential standard ensures that the Court does not "substitute its judgment for that of the agency," Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983), or "supply a reasoned basis for the [agency's] decisions that the [agency] itself has not offered," Puerto Rico Higher Educ. Assistance Corp. v. Riley, 10 F.3d 847, 850 (D.C. Cir. 1993) (internal citation omitted). "Rather, the [C]ourt must ensure that the agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action,'" Calloway v. Brownlee, 366 F. Supp. 2d 43, 54 (D.D.C. 2005) (second and third alterations in original) (quoting Riley, 10 F.3d at 850), which is determined by limiting its review to "'the administrative record already in existence [and] not some new record made initially in the reviewing court,'" Wilhelmus v. Geren, 796 F. Supp. 2d 157, 161 (D.D.C. 2011) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)).

"A 'fundamental' requirement of administrative law is that an agency 'set forth its reasons' for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." Tourus Records, Inc. v. DEA, 259 F.3d 731, 737 (D.C. Cir. 2001) (quoting Roelofs v. Sec'y of the Air Force, 628 F.2d 594, 599 (D.C. Cir. 1980)). This requirement is codified in the APA, which requires an agency to provide "a brief statement of the grounds for denial" whenever the agency "den[ies] in whole or in part . . . a written application, petition, or other request of an interested person made in connection with any agency proceeding," unless the agency is "affirming a prior denial or . . . the denial is self-explanatory." Roelofs, 628 F.2d at 599 n.21 (citing 5 U.S.C. § 555(e)). "This requirement not only ensures the agency's careful consideration of such requests, but also gives parties the opportunity to apprise the agency of any

errors it may have made and, if the agency persists in its decision, facilitates judicial review." Tourus Records, 259 F.3d at 737.

As an initial matter, the plaintiff argues that "the 'unusually deferential' standard of review is inappropriate" because, as he has framed it, "[t]he issue [in this case] is whether the [Correction Board] properly applied the due process provisions of Army Regulation 623-105 ¶ 4-27 when it concluded that [he] did not show [that the] OER was adverse" such that it should have been referred to him prior to filing it in his official military record. Pl.'s Mem. at 4-5. In advancing this argument, the plaintiff relies on Wilhelmus, 796 F. Supp. 2d 157. See Pl.'s Mem. at 4. There, another member of this Court concluded that cases involving "'military judgment requiring military expertise' . . . should be reviewed under the 'unusually deferential' standard, and 'review of the [Correction] Board's application of a procedural regulation governing its case adjudication process'" should be "reviewed under the traditional arbitrary and capricious APA standard." Wilhelmus, 796 F. Supp. 2d at 162 (quoting Kreis II, 406 F.3d at 686). The plaintiff in Wilhelmus alleged "that the [Correction Board] acted arbitrarily and capriciously when it affirmed the Army's decision to seek recoupment of more than $130,000 from him for failing to complete his obligations to the Army" by "unlawfully ignor[ing] precedent . . . [and] mistakenly conclud[ing] that his [Cadet Physical Fitness Test] failures were voluntary," id. at 161, and the Court thus found that the traditional arbitrary and capricious standard was appropriate,[7] id. at 162.

Here, however, the plaintiff challenges the 2012 Correction Board conclusion that the 1989 OER was not adverse and did not have to be referred to him before it was filed. See Pl.'s

---

[7] In deciding which arbitrary and capricious standard to apply, the Wilhelmus Court additionally noted that the parties in that case "agree[d] that the traditional APA standard should be used." 796 F. Supp. 2d at 162. By contrast, the defendant here urges this Court to apply the unusually deferential arbitrary and capricious standard. See, e.g., Def.'s Dismiss Mem. at 10-12.

Mem. at 3. This Circuit has considered similar challenges using the unusually deferential standard. See, e.g., Musengo v. White, 86 F.3d 535, 537 (D.C. Cir. 2002). In Musengo, the plaintiff "challenge[d] the Army's refusal to remove an Officer Evaluation Report from his military record," id. at 536, and the Circuit noted that "[a]lthough this court has jurisdiction to review decisions of the Correction Board, we do so under an 'unusually deferential application of the arbitrary or capricious standard' of the APA," id. at 538 (citation and footnote omitted); see also Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) ("This [unusually] deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence."). Although the plaintiff here attempts to cast his arguments in the mold of those presented to the Court in Wilhelmus, the reality is that he disagrees with the Correction Board's interpretation of his 1989 OER. See Pl.'s Mem. at 3. In particular, he argues that "[a]pplication of [Army Reg. 623-105,] ¶ 4-27(i) shows the OER was objectively adverse." Id. But, as the defendant points out, Def.'s Dismiss Mem. at 11, that regulation refers to a discretionary opinion that must be rendered by an officer's senior rater. See Army Reg. 623-105, ¶ 4-27(i) (requiring referral of OERs to a rated officer that "in the opinion of the senior rater, are so derogatory that the report may have an adverse impact on the rated officer's career"). The plaintiff's disagreement with the Correction Board's decision is undoubtedly the sort of dispute that the Court must address using the unusually deferential standard applied by the Circuit in Musengo and Cone. The Court therefore rejects the plaintiff's argument for the application of the traditional arbitrary and capricious standard, and turns now to address the 2012 Correction Board decision in light of the unusually deferential arbitrary and capricious standard.

The 2012 Correction Board decision set forth detailed reasoning for denying the plaintiff's request for removal of the 1989 OER from his record. See AR at 3-11. In evaluating the plaintiff's request for reconsideration, the Correction Board considered "military records which were summarized in the previous consideration of the [plaintiff's] case by the [Correction] Board" in the plaintiff's 1993 application, as well as in his 2001 and 2005 requests for reconsideration. Id. at 4. The Board examined his service record with the Active Guard Reserve, the contents of the contested 1989 OER, the three successfully contested OERs, the plaintiff's prior appeals to the Officer Special Review Board, and the conclusions of the 1997 Inspector General report. Id. at 4-7.

Additionally, the Correction Board considered the applicable regulations. Id. at 7-10. Importantly, the Board noted that

> Army Regulation 623-105, paragraph 4-27 of the version in effect at the time, listed the types of OERs that would be referred to the rated officer by the [senior rater] for acknowledgement and comment before they were sent to [the Headquarters of the Department of the Army]. Types of OERs that would be referred included a relief for cause report submitted under the provisions of paragraph 5-18; any report with a[] [senior rater] potential evaluation in one of the bottom three blocks in Part VIIa; or any report with ratings or comments that, in the opinion of the [senior rater] (emphasis added), are so derogatory that the report may have an adverse impact on the rated officer's career.

Id. at 8.

The Correction Board ultimately denied the plaintiff's request for reconsideration because it concluded that "there is an insufficient evidentiary basis for granting his request." Id. at 11. Specifically, the Board found that the plaintiff "failed to show that the contested OER met any of the criteria necessary to justify referral of the report." Id. at 10. The Board also noted that, "like most selection boards, the Board does not have access to and the [plaintiff's] records do not contain the reasons for an individual's selection or non-selection." Id. Absent evidence

suggesting that the plaintiff's 1989 OER served as the basis for his dismissal from service in the Active Guard Reserve, the Correction Board refused to speculate that it did.  Id.  Further, the Board noted that the applicable regulations did not "provide[] [that] the failure to refer a report constitutes grounds to remove the report from official records, unless the report is deemed to be substantively inaccurate or unjust on appeal."  Id.  Finally, the Correction Board found that "until the report was processed at [the Headquarters of the Department of the Army] and the [senior rater's] profile was imposed (overlayed), it was not known that the [plaintiff] was placed below the center of mass of the [senior rater]'s profile."  Id. at 10-11.  Because the plaintiff's rating did not "qualify for referral," the Board concluded that "his report was properly processed."  Id. at 11.

Given the Correction Board's thorough consideration of the evidence presented by the plaintiff and the applicable regulations, the plaintiff has failed to show that the "decision making process was deficient."  Kreis II, 406 F.3d at 686.  Instead, there is a "rational connection between the facts found and the choice made."  Dickson, 68 F.3d at 1404 (citation and internal quotation marks omitted).  While the plaintiff has alleged that the 1989 OER was inaccurate or unjust, he does not provide arguments or evidence to warrant a finding by this Court that the Correction Board's decision making process was deficient.  See Kreis II, 406 F.3d at 686.  The plaintiff instead quibbles with the Correction Board's analysis of the evidence that he submitted with his reconsideration request.

First, the plaintiff argues that the raters' comments and testimony in previous administrative proceedings make clear that the 1989 OER was objectively adverse.  Pl.'s Mem. at 10-12.  He makes much of the discrepancy between the Correction Board's misquotation of certain narrative comments written by the plaintiff's senior rater in the 1989 OER, compare AR

at 5 ("[The plaintiff] is an asset to the Army Reserve and should be <u>assigned</u> to an appropriate position . . . .") (emphasis added), <u>with</u> <u>id.</u> at 325 ("[The plaintiff] is an asset to the Army Reserve and should be <u>reassigned</u> to an appropriate position . . . .") (emphasis added), and argues that the senior rater's narrative comments demonstrate that the he thought "that [the plaintiff] has no potential as a Colonel in leadership positions <u>at any level</u> in the [Army Guard Reserve] program" and was instead better suited to be "a staff or action officer," Pl.'s Mem. at 11. In essence, he contends that the Correction Board failed to recognize that the narrative "comments send a message to assign [the plaintiff] to lesser positions of decreasing scope and responsibility." <u>Id.</u>; <u>see also</u> <u>id.</u> at 12. However, the narrative portion of the 1989 OER contains no indication that the plaintiff's senior rater believed him incapable of any leadership position. To the contrary, the narrative comments state that the plaintiff had done a "good job" and that his "efforts to improve coordination among this agency" and others were "particularly commendable." AR at 325. While the plaintiff is correct that the Correction Board misquoted the 1989 OER by referring to "assignment" rather than "reassignment," there is no appreciable difference between the two, especially in the context of the remaining positive remarks made by the senior rater.[8]

The plaintiff relies on <u>Richey v. United States</u>, 44 Fed. Cl. 577 (1999), where a case was remanded for the Correction Board to further consider the plaintiff's allegations that his OER was defective. <u>Id.</u> at 584-85. <u>Richey</u> is inapposite for two reasons. First, the narrative

---

[8] The senior rater's comments read in full:

> COL Lind is an effective officer whose construction management office has done a good job in a very difficult and demanding operational area that clearly required dedication to produce results. COL Lind's efforts to improve the level of coordination among this agency, FORSCOM, the CONUSAs, and the Corps of Engineers have been particularly commendable. COL Lind is an asset to the Army Reserve and should be reassigned to an appropriate position at the MUSARC or MACOM level where his talents may be best utilized.

AR at 325.

comments in the evaluation at issue there stated that the plaintiff "was just not the man for the job and it showed," id. at 579, while the evaluation at issue in this case stated that the plaintiff was "an effective officer whose construction management office has done a good job in a very difficult and demanding operational area that clearly required dedication to produce results," AR at 325. The narrative comments in this case thus are not comparable to those in Richey. Moreover, the court in Richey found that "[o]n the administrative record present [t]here, the Correction Board ha[d] not made any determination as to the merits of [the plaintiff's] allegations and the merits of the statements of his witnesses. In short, it ha[d] merely given [the plaintiff's] evidence 'short-shrift.'" Richey, 44 Fed. Cl. at 584. In this case, however, it is clear from the administrative record that the plaintiff's evidence was considered thoroughly in 1993, see, e.g., AR at 287 (stating that "[w]hile the third party statements provided by the [plaintiff] are complimentary, the [Army] Board feels that none were in a better position to appraise the [plaintiff's] performance than his rating chain"), and 2006, see id. at 34 (discussing the plaintiff's "numerous statements of support"); id. at 44 (explaining why the Correction Board did not give credence to the plaintiff's interpretation of statements of support), and thus the Correction Board decision does not suffer from the defects present in Richey.

The plaintiff also argues that his below-center-of-mass rating, as well as comments made by the rating officials to the Officer Special Review Board, render the 1989 OER adverse. Pl.'s Mem. at 12-16. He cites the senior rater's testimony that the plaintiff was "a good single action officer and a serious soldier, who was not too smart" and "had clearly been promoted beyond his level of competence [and therefore] . . . [a] four box was appropriate for the job done." Id. at 13 (citing AR at 139-40). But the plaintiff omits additional testimony that "his assignment to the open resource manager's job at [the Army Personnel Center]" was intended to give the plaintiff

"a second chance." AR at 139. Although the plaintiff may have been unhappy with the change,
the fact that the 1989 OER altered his career path within the agency does not necessarily render
the OER adverse. More importantly, as the defendant notes, Def.'s Dismiss Mem. at 18-19, the
comments were made after the OER was filed in the plaintiff's record. As discussed above, the
narrative comments of the 1989 OER are positive and, as this Circuit has recognized, "[u]nder
Army regulations, OERs are presumed to be 'administratively correct' and to '[r]epresent the
considered opinions and objective judgment of the rating officials at the time of preparation.'"
Musengo, 286 F.3d at 538 (second alteration in original).

Next, the plaintiff takes issue with the Correction Board's conclusion that the failure to
refer the 1989 OER to him prior to forwarding it to the Headquarters of the Department of the
Army is not cause for removal of the OER from his record. Pl.'s Mem. at 16-24. He argues that
the failure to refer the OER was not harmless error, id. at 16-20, and also that the failure to refer
constituted a violation of due process, id. at 20-22. But these arguments are based on the
incorrect premise that the 2006 Correction Board decision found that the 1989 OER was adverse,
and that a procedural error therefore resulted from the senior rater's failure to forward the OER
to the plaintiff. First, no referral is required for a fourth block rating. See Army Reg. 623-105, ¶
4-27(h) (requiring referral of "[a]ny report with a senior rater potential evaluation in one of the
bottom three [of the nine] blocks in part VIIa"). Moreover, the 2006 Correction Board decision
states only that the senior rater's "weaker officials were four-blocked[] [and] [b]ecause the fourth
block was below center of mass, his [senior rater] should probably have determined that the
rating made this an adverse OER, in which case his [senior rater] should have referred the OER
to the [plaintiff] for comment/rebuttal." AR at 44 (emphasis added). This equivocal language
about what the senior rater "should probably" have done does not support the plaintiff's position,

but rather indicates that the 2006 Correction Board thought it was possible to disagree with the senior rater's apparent determination that the OER was not adverse—a determination evidenced by the fact that the OER was not referred to the plaintiff. Indeed, the 2012 Correction Board decision emphasizes that referral is required of "report[s] with ratings or comments that, in the opinion of the [senior rater,] . . . are so derogatory that the report may have an adverse impact on the rated officer's career." AR at 8. In other words, it was the senior rater's opinion that would require referral of the OER to the plaintiff. And the Correction Board did not disagree with the senior rater's opinion that the OER was not so derogatory as to be adverse.[9] See AR at 10-11.

Finally, the plaintiff contends that his senior rater "knew when completing the [1989] OER that it was a below center of mass," and that therefore "the 2012 [Correction Board] argument is specious that" the below-center-of-mass rating was unknown until his OER was forwarded to Headquarters. Pl.'s Mem. at 24. For this position, the plaintiff relies on his senior rater's testimony to the Officer Special Review Board that the plaintiff "did not fare well vis-a-vis his contemporaries" and that "[a] four box was appropriate." Id. However, he misses the 2012 Correction Board's ultimate conclusion on this point, which was that the plaintiff's "placement in the [senior rater's] profile does not qualify for referral." AR at 11. While the plaintiff might be correct that the senior rater was aware that the fourth block rating placed him below-center-of-mass, it does not necessarily follow that the 1989 OER was adverse or required referral. The Army regulations require that the plaintiff "'produc[e] evidence that establishes clearly and convincingly' that the 'presumption of regularity' should not apply, and that '[a]ction is warranted to correct a material error, inaccuracy, or injustice,'" Musengo, 286 F.3d at 538

---

[9] As a result of this conclusion, it was unnecessary for the Correction Board to address the remaining questions that it agreed to address as part of the parties' voluntary remand. Def.'s Facts ¶ 36. The remand was framed such that the Correction Board would address the issues of harmless error and due process only if it found that the 1989 OER was adverse. Id.

(second alteration in original) (quoting Army Reg. 623-105, ¶ 9-7(a)), and the Correction Board reasonably concluded that the plaintiff had not presented sufficient evidence to warrant removal of the 1989 OER from his record.  On the whole, the plaintiff's complaints are similar to those made by the plaintiff in <u>Musengo</u>.  There, a plaintiff was rated in the second block, which within his senior rater's "personal profile for the relevant time period . . . placed [the plaintiff] below the center-of-mass of the other" individuals that he rated.  <u>Id.</u> at 537.  The Circuit refused to remove the OER in question from Musengo's record, declining to "begin this game of falling dominos" that would result from allowing "similar challenges from officers rated by every other rater whose profile did not match the bell-shaped curve" contemplated by the regulations.  <u>Id.</u> at 541.

## VI.  CONCLUSION

In light of the thorough consideration that the Correction Board has given the plaintiff's case, not once, but three times, and given also that the Board's 2012 decision "contain[s] a rational connection between the facts found and the choice made," <u>Dickson</u>, 68 F.3d at 1404 (citation and internal quotation marks omitted), this Court concludes that the 2012 Correction Board decision is not arbitrary or capricious, and therefore must grant summary judgment in favor of the defendant.  Accordingly, while the Court will deny the defendant's motion to dismiss for lack of subject matter jurisdiction and the plaintiff's cross motion for summary judgment, it will grant the defendant's motion for summary judgment.[10]

**SO ORDERED** this 7th day of August, 2014.

REGGIE B. WALTON
United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.